# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| DANIEL LEE CLARK, | |
| Movant, | CIVIL ACTION NO.: 5:16-cv-47 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No. 5:04-cr-15) |
| Respondent. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Nearly thirteen years ago, this Court sentenced Daniel Lee Clark ("Clark") to 195 months' imprisonment following his convictions for possession with intent to distribute five grams or more of cocaine base and possession of a firearm in furtherance of a drug trafficking crime. Clark, who is currently incarcerated at the Federal Correctional Institution-Williamsburg in Salters, South Carolina, has now filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 42.)[1] Clark contends that the Court must resentence him following the United States Supreme Court's decision in Johnson v. United States, ___ U.S. at ___, 135 S. Ct. 2551, 2563 (June 26, 2015). (Id.) However, Johnson only invalidated the Armed Career Criminal Act's ("ACCA") residual clause. Clark has failed to demonstrate that the Court relied upon the ACCA, much less the Act's residual clause, in any way during his sentencing proceedings. I recognize that Clark's advisory Sentencing Guidelines' range turned on his

---

[1] The pertinent record documents in this case are filed on the docket of Clark's criminal case, United States v. Clark, 5:04-cr-15 (S.D. Ga. Aug. 26, 2004), and many are not included in Clark's civil docket. Thus, for ease of reference and consistency, the Court cites to Clark's criminal docket in this Order and Report and Recommendation.

classification as a career offender under the Sentencing Guidelines, U.S.S.G. § 4B1.2(a)(2). However, the Supreme Court has held that Johnson does not apply to the Guidelines and has specifically held that the decision does not invalidate Section 4B1.2(a)(2)'s definition of a "crime of violence." Beckles v. United States, ____ U.S. ____, 137 S. Ct. 886 (Mar. 6, 2017). Moreover, Johnson has no application to Clark's conviction for possessing a firearm in furtherance of a drug trafficking crime under 18 USC § 924(c).

Because Clark does not raise a valid Johnson claim, he filed his Motion years outside of the one-year statute of limitations of 28 U.S.C. § 2255(f). Thus, I **RECOMMEND** that the Court **DISMISS** Clark's Motion, (doc. 42), as untimely. Alternatively, to the extent that the Court reaches the merits of Clark's arguments, it should **DENY** his Motion. Further, I **RECOMMEND** that the Court **DENY** Clark a Certificate of Appealability and *in forma pauperis* status on appeal and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

On August 26, 2004, a grand jury for this District charged Clark with: possessing approximately 7.8 grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count One); possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count Two); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). (Doc. 2.) The Government's Penalty Certification stated that Clark faced not less than five and no more than forty years' imprisonment as to Count One; not less than fifteen years nor more than life imprisonment as to Count Two; and a concurrent sentence of not less than five nor more than life imprisonment as to Count Three. (Doc. 3.)

However, Clark and his trial counsel were able to negotiate a plea agreement with the Government whereby Clark agreed to plead guilty to Counts One and Three in exchange for the Government moving to dismiss Count Two of the Indictment. (Doc. 19.) On November 23, 2004, Clark appeared before the Honorable William T. Moore, Jr., for a change of plea, or Rule 11, hearing. (Doc. 16.) At the Rule 11 hearing, Judge Moore engaged in an extensive plea colloquy with Clark to ensure that Clark fully understood his rights and the charges against him and that Clark made his decision to plead guilty knowingly, voluntarily, and intentionally. (Plea Hr'g Tr.) Among other things, Judge Moore advised Clark that the Court could impose a sentence of five to forty years' imprisonment as to a conviction for Count One and five years to life imprisonment as to a conviction for Count Three. (Id. at p. 15.) Judge Moore also made certain that Clark had discussed the Sentencing Guidelines with his counsel and that he understood generally the operation of the Guidelines. (Id. at pp. 15–17.) Prior to pleading guilty, Clark testified that no one had told him exactly what sentence he would receive, and that he understood the Court was not bound by any estimate of a sentence that Clark may have received, and that he could not withdraw his guilty plea simply because his sentence was more severe than he anticipated. (Id. at pp. 16–17, 20.)

Special Agent Stephen Tinsley of the Drug Enforcement Administration testified to a factual basis for the plea of guilty. (Id. at pp. 22–24.) Agent Tinsley recounted the events that led to the charges against Clark. (Id.) Acting in an undercover capacity, Agent Tinsley arranged to purchase crack cocaine from Clark at a McDonald's restaurant in Pierce County, Georgia. (Id. at p. 23.) When Clark arrived at the McDonald's, officers found him to be in possession of 7.8 grams of crack cocaine and a .22 caliber pistol. (Id. at pp. 23–24.) Clark admitted to the truth of Agent Tinsley's testimony. (Id. at p. 24.)

Prior to Clark's sentencing hearing, United States Probation Officer Marty Bragg prepared a Pre-Sentence Investigation report ("PSI"). Probation Officer Bragg detailed Clark's offense conduct and criminal history and calculated Clark's statutory penalties, as well as his advisory Guidelines' range. During his presentence interview with Officer Bragg, Clark freely admitted to possessing 7.8 grams of crack cocaine and to possessing a firearm in furtherance of that drug trafficking crime. (PSI, ¶ 11.)

Officer Bragg concluded that Clark was a career offender under U.S.S.G. § 4B1.1 because: (1) Clark was at least eighteen years old at the time he committed the offenses in this case; (2) the offense (possession of five grams or more of crack cocaine with intent to distribute) was a controlled substance offense; and (3) Clark had at least two prior felony convictions of either a crime of violence or a controlled substance offense, as he was previously convicted of sale of cocaine and aggravated assault of a law enforcement officer. (Id. at ¶ 23.) Officer Bragg calculated Clark's Guidelines' range under Section 4B1.1(c)(2), because Clark had two counts of conviction and one of those counts was for violating 18 U.S.C. § 924(c). (Id. at ¶¶ 26–27.) Given Clark's three-level decrease for acceptance of responsibility, the Table at U.S.S.G. § 4B1.1(c)(3) provided a Guidelines' range of 262 to327 months' imprisonment under Section 4B1.1(c). (Id.)[2]

---

[2] The Guidelines stated that the Court should apply "**the greater of**" the sentencing range of the two alternatives: the method at Subsection (c)(2)(A) or the table at Subsection (c)(3). U.S.S.G. § 4B1.1(c)(2) (emphasis supplied). The method of reaching a sentencing range under Subsection 4B1.1(c)(2)(A) called for a lower sentencing range than the range called for by the table at Subsection (c)(3). As Probation Officer Bragg explained, given an offense level of 31, the Guidelines would have called for a Guidelines' range of 188 to235 months' imprisonment as to Count One. (PSI, ¶ 27.) The statutorily required term of imprisonment for the possession of a firearm in furtherance of a drug trafficking crime charge was 60 months' imprisonment, not to be run concurrently. (Id.) Thus, the method at Subsection 4B1.1(c)(2)(A) resulted in a sentence range of 248 (188 plus 60) to 295 (235 plus 60) months' imprisonment. (Id.) However, Because the table at Subsection (c)(3) provided a greater sentencing range, that sentence applied.

Clark's counsel filed numerous objections to the PSI. (Id. at pp. 18–22.) He argued, among other things, that under United States v. Booker, 543 U.S. 220 (2005), it would be unconstitutional to apply Section 4B1.1(c)(3) to Clark. (Id.) Counsel also argued that Clark's criminal history category of VI significantly overrepresented the seriousness of his prior offenses. (Id.)

On March 14, 2005, Clark appeared before Judge Moore for a sentencing hearing. Clark's counsel reiterated his argument that the career offender designation under the Guidelines violated Clark's Sixth Amendment rights under Booker. (Sent. Hr'g Trans., pp. 4–5.) Judge Moore overruled Clark's Booker objection. Judge Moore ruled that Eleventh Circuit authority and the advisory Guidelines made clear that the Court was allowed to make factual findings regarding the defendant's criminal record without a jury finding or an admission by the defendant. (Id. at pp. 5–6.)

Clark fared much better with his objection that his criminal history category overrepresented the seriousness of his history. Judge Moore expressed the Court's concerns regarding the overrepresentation, given Clark's youth at the time of his offenses and the facts underlying his offenses. (Id. at pp. 7–8.) After hearing from counsel for Clark and the Government, Judge Moore found that "defendant is a career offender" but sustained Clark's criminal history objection. (Id. at pp. 8–12.) Judge Moore held that Clark's "criminal history category significantly over-represents the seriousness of the defendant's criminal history and the likelihood that the defendant will commit further crimes." (Id. at p. 13.) Based on that objection, Judge Moore departed downward to find a Guidelines' range of 135 to168 months' imprisonment for the crack cocaine charge plus 60 months on the possession of a firearm charge, resulting in a final total range of 195 to 228 months' imprisonment. (Id. at p. 12.) Judge Moore

sentenced Clark at the bottom of that range: a total sentence of 195 months' imprisonment consisting of 135 months' imprisonment for his crime of possession of crack cocaine with intent to distribute (Count One) and a consecutive 60 months' imprisonment for his crime of possession of a firearm in furtherance of a drug trafficking crime (Count Three). (Id. at p. 13; Doc. 20.) Pursuant to the plea agreement, Judge Moore dismissed the remaining charge of possession of a firearm by a convicted felon (Count Two). (Doc. 20.)

Clark appealed this sentence to the United States Court of Appeals for the Eleventh Circuit. (Doc. 21.) First, Clark reiterated his Booker argument and contended Section 4B1.1 requires the Court to impermissibly find facts beyond the existence of prior convictions. See United States v. Clark, 163 F. App'x 799, 801–02 (11th Cir. 2006). The Eleventh Circuit rejected this argument for several reasons. Id. Clark also argued that his sentence was unreasonable under 18 U.S.C. § 3553(a). The Eleventh Circuit denied this argument as well. Id. at 802. The Court noted Judge Moore's downward departure in Clark's criminal history category and stated that, given Clark's resulting sentence that was seventy (70) months lower than the bottom of the Probation Officer's recommended Guidelines' range and one-quarter of the statutory maximum for his crime, "Clark is the beneficiary of a favorable guidelines calculation." Id. For this and other reasons, the Eleventh Circuit affirmed Clark's sentence.

However, still unsatisfied with his "favorable" sentence, Clark filed a motion to reduce sentence due to retroactive changes to the Guidelines' drug quantity table for crack cocaine. (Doc. 32.) The Court denied this motion, explaining, "[t]he defendant's motion is denied because his offense level is determined based on his designation as a career offender and not the drug quantity table." (Doc. 33.) Clark appealed that decision, arguing that, while Judge Moore sentenced Clark as a career offender, he received a downward departure for over-representation

of criminal history, and thus, his sentence was not based on the career offender Guideline. The Eleventh Circuit rejected this argument and affirmed the denial of Clark's motion. (Doc. 37.)

In his instant Section 2255 Motion, Clark argues that the Court must revisit his sentence because the Court sentenced him under the residual clause of the ACCA, which the Supreme Court invalidated in Johnson. (Doc. 42, pp. 1–4.) He also contends his prior convictions cannot be considered crimes of violence under the ACCA's "force clause." (Id. at pp. 7–8.) Additionally, Clark claims he was convicted for possession of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c). Clark reasons that, because Section 924(c)(3)'s definition of a "crime of violence" is substantially similar to the ACCA's residual clause, his conviction relying on that definition must be invalidated under Johnson. (Id. at pp. 6–7.)

The Government responded to Clark's Motion and explains that his arguments misconstrue the statutes under which he was actually convicted and sentenced. (Doc. 44.) The Government contends that Johnson provides Clark no relief because he was not convicted of possession of a firearm by a convicted felon under the ACCA or possession of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c). (Id.) Rather, the Government explains Clark was convicted of possessing a firearm in furtherance of a drug trafficking crime. (Id.) However, the Government notes that Clark's Guidelines' range did hinge on his status as a career offender under Section 4B1.2.

Clark filed a Reply to the Government's response where he appeared to challenge his Guidelines' career offender designation.[3] (Doc. 45.) Following Beckles, the Government filed a Supplemental Response maintaining that, to the extent that Clark attempts to use Johnson to challenge his Guidelines' career offender designation, Beckles forecloses that argument.

---

[3] Clark filed a Motion to stay the proceedings in this case pending the Supreme Court's decision in Beckles. (Doc. 46.) The Court granted Clark's Motion. (Doc. 47.)

7

(Doc. 48). Clark filed a Reply, arguing that he was "wrongfully sentenced by the Court as a career criminal due to the fact that the Court erroneously used his prior conviction for aggravated assault from the State of Georgia, when in fact aggravated assault is not considered a violent offense under the State of Georgia Laws and Statutes." (Doc. 49, p. 2.)

## DISCUSSION

### I. Whether Clark Timely Filed his Petition

To determine whether Clark timely filed his Motion, the Court must look to the applicable statute of limitations period. Motions made pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations period. 28 U.S.C. § 2255(f). This limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Clark was sentenced on March 14, 2005, and the Court entered final judgment on March 16, 2005.[4] (Doc. 20.). Clark filed a Notice of Appeal, and the Eleventh Circuit entered judgment affirming his sentence on February 2, 2006. (Doc. 29.) Thus, Clark had until February

---

[4] Though Clark moved for and was denied a sentence reduction, his judgment of conviction became final on March 16, 2005, his original date of conviction. Even if Clark's motion had been successful, the Eleventh Circuit has held that a "sentence modification does not constitute a new judgment of conviction that restarts § 2255's statute of limitations clock." Murphy v. United States, 634 F.3d 1303, 1309 (11th Cir. 2011).

8

2, 2007, to file a timely Section 2255 motion. 28 U.S.C. § 2255(f)(1). Clark did not execute his Section 2255 Motion until June 23, 2016, which was more than nine years after the expiration of the applicable statute of limitations period. Consequently, Clark's Motion is untimely under Section 2255(f)(1).

Clark does not argue that he is entitled to equitable tolling or to the statute of limitations periods set forth in Sections 2255(f)(2) or (4). Rather, he argues that he timely filed his Motion under Section 2255(f)(3) because Johnson is a new rule of constitutional law made retroactive to cases on collateral review. (Doc. 42, pp. 10–11.) Indeed, in Welch v. United States, ___ U.S. ___, 136 S. Ct. 1257, 1265 (Apr. 18, 2016), the Supreme Court held that Johnson is a substantive decision which applies retroactively to cases on collateral review. Thus, if Clark actually asserted a right newly recognized by the Supreme Court in Johnson, Section 2255(f)(3) could allow Clark to bring his Section 2255 Motion. However, as discussed in Sections II and III below, Clark does not bring a cognizable Johnson claim. Because Clark does not bring a valid Johnson claim, he cannot rely upon Johnson to excuse the untimeliness of his Section 2255 Motion.

For all of these reasons, the Court should **DISMISS** Clark's Motion as untimely.

## II. Whether Johnson Applies to Clark's Guidelines Career Offender Sentence Enhancement

In Johnson, the Supreme Court held that "imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process[.]" ___ U.S. at ___, 135 S. Ct. at 2563. The ACCA provides enhanced penalties for defendants who are (1) convicted of being felons in possession of firearms in violation of 18 U.S.C. § 922(g) and (2) have "three prior convictions . . . for a *violent felony* or a serious drug offense, or both." 18 U.S.C. § 924(e)(1) (emphasis added). The residual clause of the ACCA defines "violent

felony" as, *inter alia*, a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court found the "residual clause" so vague as to violate due process. See ___ U.S. at ___, 135 S. Ct. at 2557.

The "crime of violence" definition formerly contained within the Sentencing Guidelines' career offender enhancement provision is identical to the residual clause language found unconstitutional in Johnson. U.S.S.G. § 4B1.2(a)(2) (2004). Despite this similarity, the Supreme Court held in Beckles that the Johnson holding does not apply to the residual clause of the Sentencing Guidelines. In Beckles, the petitioner was arrested for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). "Due to multiple prior felonies, Beckles['] violation of 18 U.S.C. § 922(g) subjected him to the enhanced penalty provision of 18 U.S.C. § 924(e)(1)[,] and the district court found him to be an armed career criminal pursuant to that statute." United States v. Beckles, 565 F.3d 832, 841 (11th Cir. 2009). "This finding, in turn, qualified Beckles for a sentence enhancement under [Section 4B1.4 of the Sentencing Guidelines]." Id. Section 4B1.4 of the Sentencing Guidelines "instructs that the appropriate offense level is . . . [*inter alia*] the offense level described in § 4B1.1, if applicable." Id. at 841–42. "Section 4B1.1, in turn, applies if":

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either <u>a crime of violence</u> or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Id. at p. 842 (citing U.S.S.G. § 4B1.1(a) (emphasis supplied)). The term "crime of violence" previously included "any offense under . . . state law, punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical

10

injury to another." U.S.S.G. § 4B1.2(a) (2004). "At [Beckles'] sentencing, the district court found that § 4B1.1 was applicable . . . reasoning that two of Beckles['] prior felony convictions were for qualified controlled substances offenses, and the current 18 U.S.C. § 922(g) conviction [for being a felon in possession of a firearm] was for a 'crime of violence'" Id.

In Beckles' subsequent Section 2255 motion, he "claimed that he was improperly sentenced as a career offender under U.S.S.G. § 4B1.1, [arguing that] his conviction for possession of a sawed-off shotgun was not a 'crime of violence.'" Beckles v. United States, 579 F. App'x 833, 833 (11th Cir. 2014), *vacated*, Beckles, ___ U.S. at ___, 137 S. Ct. at 886. The Eleventh Circuit Court of Appeals denied Beckles' Section 2255 motion, finding Johnson inapplicable to the Sentencing Guidelines. Beckles subsequently filed a petition for certiorari in the United States Supreme Court, again contending that the Sentencing Guidelines' residual clause is void for vagueness under Johnson. The Supreme Court granted certiorari and affirmed the decision of the Eleventh Circuit, holding that "the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine." Id., ___ U.S. at ___, 137 S. Ct. at 896. The Court reasoned that, unlike the ACCA, "[t]he advisory Guidelines [ ] do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement."[5] Id., ___ U.S. at ___, 137 S. Ct. at 894. The Court further distinguished the Guidelines from the ACCA because the ACCA *requires* sentencing courts to increase a defendant's prison term from a statutory maximum of 10 years to a minimum of 15 years, whereas the Guidelines are advisory. Id., ___ U.S. at ___, 137

---

[5] Specifically, the Supreme Court found that "even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range." Beckles, ___ U.S. at ___, 137 S. Ct. at 894. As to arbitrary enforcement, the Guidelines "do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for [any] crime.'" Id., ___ U.S. at ___, 137 S. Ct. at 895 (citing Mistretta v. United States, 488 U.S. 361, 396, (1989)). "Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress." Id.

S. Ct. at 892. Therefore, although the Sentencing Guidelines' residual clause and the ACCA's residual clause are identical, the Sentencing Guidelines are not subject to a void-for-vagueness challenge under Johnson because the Guidelines "merely guide the district courts' discretion[.]" Id., ___ U.S. at ___, 137 S. Ct. at 894.

As laid out above, the Court deemed Clark a career offender under U.S.S.G. § 4B1.1(a) due to his prior conviction for sale of cocaine and aggravated assault of a law enforcement officer. Clark contends that the Court should resentence him without that designation due to the decision in Johnson. However, the Supreme Court's decision in Beckles entirely forecloses this argument. Under Beckles, Johnson has no applicability to the Guidelines. Therefore, Clark cannot use Johnson to challenge the Court's Guidelines' calculation.

Moreover, despite his contentions to the contrary, Clark was not convicted under the ACCA. To be sure, Count Two of the Indictment charged Clark with being a felon in possession of a firearm and sought the enhanced penalties under the ACCA on that charge. (Doc. 1.) However, pursuant to Clark's plea agreement, the Court dismissed that Count. Clark's only convictions were for possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The ACCA played no part whatsoever in Clark's conviction or sentence.

For all of these reasons, the Court should **DENY** Clark's claim that Johnson invalidates his Guidelines' career offender classification and resulting sentence.[6]

---

[6] In his most recent pleading, Clark also claims that the Court should not have classified him as a career offender because his aggravated assault of a law enforcement officer does not meet the definition of a "crime of violence." (Doc. 49.) This claim does not validly rely upon Johnson, and Clark does not raise any other reason why this claim should not be barred by Section 2255(f)'s statute of limitations. Thus, the Court need not reach the merits of this claim, because it is untimely. Moreover, this claim is procedurally defaulted, as Clark failed to raise it on direct appeal. "Generally, if a challenge to a

## II.     Whether <u>Johnson</u> Applies to Clark's Section 924(c) Conviction

Alternatively, Clark cites <u>Johnson</u> to challenge his Section 924(c) conviction under Count Three of the Indictment. Distinct from Section 924(e)(1) of the ACCA, Section 924(c)(1)(A) provides for a separate consecutive sentence if any person uses or carries a firearm during and in relation to a "any crime of violence **or** drug trafficking crime." 18 U.S.C. § 924(c)(1)(A) (emphasis added). For the purposes of Section 924(c), Section 924(c)(3) defines "crime of violence" as an offense that is a felony and:

> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The former clause is commonly referred to as the "use of force" clause and the latter clause is known as the "risk of force" clause. Clark argues that the risk of force clause's definition of "crime of violence" so echoes the ACCA's residual clause's definition of "violent felony" that <u>Johnson</u> invalidates the risk of force clause, too.

However, Section 924(c)(3)'s definition of "crime of violence," much less the risk of force clause, played no part whatsoever in Clark's conviction and sentence. He was not charged,

---

conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279–80 (11th Cir. 2005) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). Additionally, even if the Court did reach the merits of this claim, it is a loser. Courts have repeatedly found that a conviction for aggravated assault of a law enforcement officer qualifies as a "crime of violence" under the version of Section 4B1.2(a) applicable at Clark's sentencing. <u>See</u> <u>United States v. Smith</u>, 417 F. App'x 911, 917 (11th Cir. 2011); <u>Merritt v. United States</u>, No. CR408-205, 2011 WL 221864, at *2 (S.D. Ga. Jan. 20, 2011), *report and recommendation adopted*, No. CR408-205, 2011 WL 1557996 (S.D. Ga. Apr. 25, 2011). Further, to the extent it is relevant, the current version of Section 4B1.2 enumerates "aggravated assault" as a crime of violence. Moreover, Clark's unsupported claim that aggravated assault is not a crime of violence under Georgia law, (doc. 49, p. 1), is unavailing. <u>United States v. McKnight</u>, 154 F. App'x 134, 136 (11th Cir. 2005) (state's characterization of crime as non-violent is "immaterial" as federal law determines the proper application of the federal Sentencing Guidelines) (citing <u>United States v. Ayala-Gomez</u>, 255 F.3d 1314 (11th Cir. 2001)).

much less convicted, of possessing a firearm in furtherance of crime of violence. Rather, as the Indictment makes clear, Clark was charged with possessing a firearm in furtherance of a drug trafficking crime. (Doc. 1.) In Count Three, the grand jury alleged:

> On or about June 2, 2004, in Pierce County, in the Southern District of Georgia, the defendant DANIEL LEE CLARK did knowingly and intentionally possess a firearm, to wit: a Davis Model OM-22 .22 magnum caliber pistol, serial no. 541363, **in furtherance of a drug trafficking crime** for which he may be prosecuted in a court of the United States, that is, the possession with intent to distribute cocaine base (crack), a Schedule II controlled substance, as charged in Count One herein, in violation of Title 18, United States Code, Section 924(c)(1)(A).

(Doc. 2, p. 2 (emphasis supplied).) Clark pleaded guilty to this Count, as well as the drug trafficking crime alleged in Count One. The statute clearly defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). Clark's possession of approximately 7.8 grams of crack cocaine with intent to distribute meets this definition. Consequently, regardless of the validity of Section 924(c)'s risk of force clause, Clark's Section 924(c) conviction unquestionably survives Johnson.[7] McKay v. United States, No. 16-15377-D, 2017 WL 3597200, at *2 (11th Cir. Apr. 17, 2017) ("Here, McKay was convicted of using or carrying a firearm during or in relation to a drug-trafficking crime. Thus, even assuming arguendo that Johnson is somehow applicable to § 924(c), his conviction on this count does not raise any residual clause issues regarding § 924(c)'s crime-of-violence definition."); see also Navarro v. United States, 679 F. App'x 973,

---

[7] Further, even if the "risk of force" clause had played a role in Clark's case, the Eleventh Circuit has held that the clause is not invalidated by Johnson. Ovalles v. United States, 861 F.3d 1257, 1259 (11th Cir. 2017) ("Johnson does not apply to or invalidate § 924(c)(3)(B)[.]").

974 (11th Cir. 2017); United States v. Parnell, 652 F. App'x 117, 122 (3d Cir. 2016) ("Johnson does not call into question the statute's unambiguous definition of 'drug trafficking crime.'").

Thus, the Court should **DENY** Clark's claim that Johnson invalidates his Section 924(c) conviction.

## III.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Clark leave to appeal *in forma pauperis* and a Certificate of Appealability. Though Clark has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); see also Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

15

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Clark a Certificate of Appealability, Clark is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Clark *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Clark's Motion, (doc. 42), as untimely. Alternatively, to the extent that the Court reaches the merits of Clark's arguments, I **RECOMMEND** the Court **DENY** his Motion. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Clark a Certificate of Appealability and *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA